## AMERICAN PRESS COMPANY, LTD., Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.

Docket No. 1412.   Decided September 23, 1926.

1. The valuation of an Associated Press franchise determined for invested capital purposes.

2. *Held*, under the evidence, that withdrawals by officers were not dividends.

*Isom J. Guillory Esq.*, and *E. Barrett Prettyman, Esq.*, for the petitioner.

*Ward Loveless, Esq.*, for the respondent.

This is an appeal from the determination of income and profits taxes for the calendar years 1917, 1918, and 1919, in the amount of $2,858.34. For the years 1917 and 1918 no deficiency has been determined but an overassessment for each of those years was determined by the Commissioner.

The taxpayer alleges twenty-two errors on the part of the Commissioner as the basis of its appeal.

At the hearing the taxpayer waived certain issues and certain other allegations of error were admitted by the Commissioner in his answer. This leaves for consideration only three questions, all of which involve invested capital.

The first question is what amount, if any, the taxpayer should be entitled to include in invested capital with respect to Associated Press franchises acquired by the taxpayer at its organization. Second, what amount, if any, the taxpayer should be allowed in invested capital with respect to amounts expended in years prior to 1917 in building up a circulation structure. Third, whether amounts withdrawn by two officers of the corporation are to be treated as dividends or included in invested capital as accounts receivable.

The Commissioner raised the question of the jurisdiction of the Board with respect to the years 1917 and 1918 in that for those years the Commissioner determined no deficiencies.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Louisiana with its principal place of business at Lake Charles. It was organized in the first part of 1910 and issued its capital stock of the par value of $47,500 to Beatty and Jones in exchange for assets which those two individuals had acquired in November or December of 1909. Beatty and Jones bought the business and equipment of two newspapers published in Lake Charles, La., including the As-

sociated Press franchise and accounts receivable. They paid for those assets about $47,500. When they turned the assets over to the taxpayer corporation in exchange for its capital stock, they assigned a value of $10,000 to the Associated Press franchise which they had acquired, and it was the understanding of these two men that $10,000 par value of stock was to be specifically attributed to and issued for such franchise. The balance of the capital stock was issued for the other properties which the two individuals had acquired from the two newspapers. A considerable part of the machinery and equipment acquired by the taxpayer from the two individuals was abandoned very soon after its acquisition and was replaced with other and more modern machinery and equipment. One of the principal reasons that the two individuals had in acquiring the assets of the newspapers which they turned over to the taxpayer was to obtain the Associated Press franchise.

In April, 1911, 25 shares of the capital stock of the taxpayer were sold at par. At the close of 1918 and 1919, respectively, the taxpayer had upon its books accounts receivable of Beatty, president of the company, and Smith, secretary and treasurer, of $8,108.62 and $9,723.66, respectively. These amounts had been withdrawn by the two individuals from the corporation. Payments on account were made each year in excess of the balance due at the beginning of that year. Both of these officers were financially responsible and able to pay the amount shown in the accounts. Numerous entries, both debits and credits, were made in the accounts each year. In 1918 Beatty owned 430 shares and Smith owned 120 shares. There was no change in the stock ownership of these two individuals during 1919. During 1918 there were other stockholders who owned stock as follows:

|                  | Shares. |
|------------------|---------|
| T. S. Troy       | 60      |
| J. W. Gardner    | 23      |
| A. M. Mayo       | 5       |
| J. J. Blacke     | 3       |
| C. C. Gauthier   | 1       |
| C. D. Moss       | 1       |
| S. T. Woodring   | 5       |

During 1919, five of the smaller stockholders sold their stock. The amounts withdrawn by the two individuals were not carried in a dividend account. A portion of the amount charged to the officers represented accounts due the company which had been assumed by such individuals and had been charged to their account. Other items represented withdrawals and payments to the individuals during the year. They were carried in a current account. The amounts withdrawn by the officers represented accounts receivable.

OPINION.

TRAMMELL: On one of the issues involved, that is, with respect to the amounts expended in building up a circulation structure, no competent testimony was offered and consequently no finding of fact was made with respect thereto.

With respect to the amount to be included in invested capital on account of the acquisition of the Associated Press franchise by the taxpayer in exchange for shares of its capital stock, the evidence discloses that the taxpayer issued its stock for the franchise. It also appears that at the time of the acquisition thereof the individuals who had acquired it made a segregation of the franchise from the other assets, and when they turned over the assets to the corporation they assigned a value of $10,000 to the franchise and it was their intention to allocate that amount of stock thereto. The individuals who purchased the assets of the two newspapers which were turned over to the taxpayer paid about $47,500 for the assets, including the franchise. The franchise was the principal thing which they desired. This is evidenced by the fact that most of the machinery, fixtures and equipment which they acquired were abandoned and scrapped and were replaced by new and more modern machinery, equipment and fixtures very soon after the organization of the taxpayer corporation. The two individuals, when they acquired the assets of the two newspapers, had in mind the organization of the corporation to take over the assets and they turned them over to the corporation for stock of the same par value as the consideration they had paid therefor. Approximately one year after the organization of the company this stock sold on the open market at par.

From a consideration of all the evidence we are of the opinion that the Associated Press franchise acquired by the taxpayer for stock had a value of not less than $10,000 and that amount should be included in invested capital on account of the acquisition of such franchise.

Without restating the facts relating to the accounts of the two officers, we are of the opinion, considering all the facts, that the amounts represented accounts receivable and should be included in invested capital.

On the jurisdictional question raised by the Commissioner with respect to the years 1917 and 1918, it is our opinion that we have no jurisdiction to determine whether the overassessments for those years should be increased, it appearing that the Commissioner has not asserted a deficiency for either of those years. See *Appeal of R. P. Hazzard Co.*, 4 B. T. A. 150.

The taxpayer in its petition alleged that invested capital was overstated by $2,142.86 on account of depreciation which had not

been deducted. It is also conceded by the Commissioner that invested capital should be increased by $451.57 on account of the fact that the Commissioner computed the income and profits taxes for 1917 in excess of the amount properly due.

The Commissioner in his answer also admitted that invested capital for 1919 was understated by $1,063.97 representing additional income tax for 1917 which had been erroneously deducted twice from invested capital for 1919.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*